# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

CHRIS MORGAN,

      Petitioner,

v.                                     Case No. 3:20-cv-272-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

## I.   Status

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 9). He challenges a 2016 state court (Duval County, Florida) judgment of conviction for aggravated fleeing or attempting to elude a law enforcement officer. He is serving a 30-year term of imprisonment as a habitual felony offender (HFO). Respondents filed a Response (Doc. 14) with exhibits (Docs. 7-1 to 7-9; Ex.). Petitioner filed a Reply (Doc. 17). This case is ripe for review.[1]

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must

## II.     **Governing Legal Principles**

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. ne2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

---

consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." <u>Id.</u> [at 102] (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope</u>

v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state

> procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>, 501 U.S. at 747-48; <u>Wainwright v. Sykes</u>, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 131 S. Ct. 1120, 1127-28 (2011); <u>Beard v. Kindler</u>, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S. at 750.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such

evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u> at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693. Counsel's errors must be "so serious as to deprive the defendant

> of a fair trial, a trial whose result is reliable." <u>Id.</u> at
> 687.

<u>Richter</u>, 562 U.S. at 104 (internal citations modified).

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at 105. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is

> "any reasonable argument that counsel satisfied
> Strickland's deferential standard," then a federal
> court may not disturb a state-court decision denying
> the claim. Richter, 562 U.S. at 105.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## III.   **Procedural History**

The following summary of the trial is taken from Petitioner's brief on direct appeal:

> Deputy Schmidt stopped a vehicle for a cracked
> windshield and an obscured tag. He made contact with
> the driver, whom he identified as [Petitioner]. He was
> given a Florida driver's license. Schmidt ran the
> license in the Florida driver and vehicle information
> database and confirmed it was an actual valid driver's
> license. He took possession of the driver's license. The
> license was placed in evidence, but was not introduced
> at trial. Schmidt had a brief conversation with the
> driver: "at least 45 seconds maybe to two minutes,
> maybe a little over two minutes, give or take." Schmidt
> returned to his car and ran the license and registration
> through his computer system. Over objection, he
> testified that another picture of [Petitioner] pulled up

on his screen. He was able to confirm that it was [Petitioner]. He called for a backup officer. Once he arrived, they called for [Petitioner] to come back to them. [Petitioner] drove away and there was a twelve mile pursuit. The in-car video was played. The pursuit was then cancelled. The backup officer passed directly in front of the driver of the car.

During closing arguments, the defense argued that there was a lack of evidence. Counsel argued that the backup officer was not called to identify [Petitioner], DMV records were not introduced to confirm that the vehicle belonged to [Petitioner] or his daughter, and the driver's license was not introduced.

Without objection, the state argued that if another officer testified, the defense would have found a problem with the angle the officer drove in and didn't get a really good look at him. The state argued there was no need for the jury to have the driver's license in front of them since the deputy triple checked the identification by physically looking at the driver's license.

The jury asked a question of where was the driver's license. The court did not answer the question.

The jury returned a verdict finding [Petitioner] guilty. [Petitioner] was sentenced to thirty years as an [HFO].

Ex. C. at 2-3 (internal record citations omitted).

On direct appeal, Petitioner, through appellate counsel, raised two arguments: (1) he was "denied a fundamentally fair trial by prosecutorial misconduct during closing;" and (2) "[t]he trial court erred in overruling [his] objection to the testimony of Deputy Schmidt that his computer displayed

[Petitioner's] photograph when he ran the license." Id. at i. Notably, Petitioner did not cite to or address any federal law in his brief. The state filed an answer brief. Ex. D. The First District Court of Appeal per curiam affirmed Petitioner's judgment of conviction without a written opinion. Ex. E.

Petitioner then filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Ex. F at 3-70. He raised the following claims: (1) he was denied due process under the United States Constitution by the trial court's refusal to utilize the proposed supplemental jury instruction; (2) his trial counsel was ineffective under the United States Constitution by failing to object to the trial court's use of the standard jury instruction instead of his proposed "good faith mistake supplemental instruction"; (3) he was denied due process under the United States Constitution when the state bolstered Deputy Schmidt's testimony during closing argument by referring to evidence not introduced into the record; (4) his trial counsel was ineffective under the United States Constitution by failing to object to the state bolstering Deputy Schmidt's testimony during closing argument; (5) he was denied due process under the United States Constitution when the trial court allowed the prosecutor to continually invade the province of the jury over his counsel's objections. Ex. F at 9-32. The state court summarily denied Petitioner's claims. Id. at 71-255.

Petitioner appealed, and the First DCA per curiam affirmed the denial of Petitioner's postconviction motion. Ex. I. This case followed.

**IV**.  <u>**Analysis**</u>

    **A. Ground One**

According to Petitioner, his trial counsel was ineffective in handling his requested special jury instruction and he was denied due process and a fair trial by the trial court's failure to provide a special but necessary jury instruction. Doc. 9 at 5; Doc. 10 at 2. He contends that his counsel failed to explain to the trial court "why the standard instruction given did not convey to the jury the key point of the special instruction—"that a [state] witness could make a mistake in identifying Petitioner without lying. (Good Faith)." Doc. 10 at 2. He also asserts that trial counsel failed to alert the state court to the federal nature of this claim. <u>Id.</u> at 2-3.

Insofar as Petitioner raises the same ineffectiveness claim that he did in his Rule 3.850 motion, the Court defers to the state court's adjudication of that claim. In denying Petitioner's Rule 3.850 motion, the state court found that "Defense Counsel was not deficient at the trial stage because he made every good faith effort to allow the jury to hear Defendant's proposed special instruction." Ex. F at 74. The First DCA per curiam affirmed the denial without issuing a written opinion. Ex. I. Upon thorough review of the record, this Court concludes that the state court's adjudication was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented.

Petitioner, however, asserts that he did not raise the same ineffectiveness claim in state court and he asks this Court to consider the claim under the exception outlined in <u>Martinez</u>, 566 U.S. at 1. In <u>Martinez</u>, the Supreme Court recognized a narrow exception to the rule that an attorney's error in a postconviction proceeding does not constitute cause for a procedural default:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

<u>Id.</u> at 17. To establish cause under <u>Martinez</u>, Petitioner must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." <u>Id.</u> at 14; <u>see also</u> <u>Lambrix v. Sec'y Fla. Dept. of Corr.</u>, 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is not substantial if it lacks merit or is wholly without factual support. <u>See</u> <u>Martinez</u>, 566 U.S. at 15-16.

Before trial, Petitioner's counsel filed a proposed special jury instruction on eyewitness identification. Ex. A at 25. The special instruction requested was

based on a 1998 case from the Supreme Court of Massachusetts. Id. The proposed instruction stated:

> Identification testimony is an expression of opinion or impression by the witness. In deciding whether or not to believe a witness who identifies the defendant, remember that you must consider not only whether the witness is telling the truth or is lying. You must also consider the possibility of a "good faith mistake."

Id. During a pretrial hearing on July 14, 2016, the state court heard argument on the proposed instruction. Id. at 108-12. The state argued that the special instruction was unnecessary because the standard jury instructions sufficiently cover eyewitness identifications. Id. at 111. Petitioner's counsel responded:

> [The standard instructions] do not address what the issue here is, that it's simply that there could, in fact, be a good faith mistake. It's alerting the jury that it's not a matter of whether a witness - - the only two options for not telling the truth are lying, that someone could be telling what they believe to be the truth and still be mistaken, and it is - - it has been recognized by the [Supreme Court of Massachusetts].

Id. The state court denied Petitioner's request to have that instruction read to the jury. Id. at 112.

Petitioner now asserts that his trial counsel "failed to explain to the Court why the standard instruction given did not convey to the jury the key point of the special instruction – "that a [state] witness could make a mistake in identifying Petitioner without lying," and that "counsel failed to present the

state court's with the federal constitutional violations not just the state law or rule violations." Doc. 10 at 2. To the extent Petitioner raises a different claim than he did in his Rule 3.850 proceeding, this Court finds Petitioner's ineffectiveness claim in Ground One to be insubstantial. His trial counsel presented the proposed instruction to the state court and argued that the standard instructions did not cover whether a witness made a "good faith mistake." Counsel essentially made the argument that Petitioner claims he should have made, and the state court denied the request. Moreover, during closing argument, trial counsel argued: "The Judge is going to give you an instruction about eyewitness identification, because at the end of the day, whether [Deputy Schmidt's] wearing a badge or not, he's still a human being. Deputy Schmidt is a flesh and blood human being capable of mistakes." Id. at 98. Petitioner's trial counsel was not ineffective in the manner Petitioner suggests.

The Court further finds that trial counsel's failure to raise the federal constitutional nature of this claim did not render counsel ineffective. Regardless, Petitioner fails to show prejudice. He has not shown that but for his counsel's alleged failures in Ground One, the outcome of the proceeding would have been different. Thus, Petitioner's ineffective assistance of counsel claim is not substantial and due to be denied.

To the extent Petitioner seeks to raise a trial court error claim regarding the instruction, such claim is procedurally barred. As Petitioner recognizes, he did not raise any such claim on direct appeal. Petitioner has shown neither cause nor prejudice resulting from the procedural bar, and he fails to demonstrate a fundamental miscarriage of justice would result if this claim were not addressed. Regardless, "[s]tate court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness." Jones v. Kemp, 794 F.2d 1536, 1540 (11th Cir. 1986). To establish fundamental unfairness, the petitioner must demonstrate "the error 'so infected the entire trial that the resulting conviction violates due process.'" Jacobs v. Singletary, 952 F.2d 1282, 1290 (11th Cir. 1992) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155. In such cases, the burden on the petitioner is "especially heavy." Id. Here, the trial court's decision to reject this special instruction did not render Petitioner's trial fundamentally unfair. Accordingly, Ground One is due to be denied.

## B. Ground Two

Petitioner asserts that trial counsel was ineffective for failing to object to the improper bolstering of the state's star witness during the state's closing argument. Doc. 9 at 7; Doc. 10 at 4. He also argues that the trial court erred by

permitting "this bolstering which was highly improper[,] . . . a clear due process violation and violative of the right to a fair jury trial and confrontation." Doc. 10 at 5; Doc. 9 at 7.

Insofar as Petitioner raises the same ineffectiveness claim here that he did in his Rule 3.850 motion, the state court's decision is entitled to deference. Indeed, the state court, after identifying <u>Strickland</u> as the controlling precedent for ineffective assistance of counsel claims, denied the claim as follows:

> In Ground Four of his motion, Defendant claims that his attorney was ineffective for failing to object when the State allegedly bolstered witness testimony during its closing argument to the jury. Stated differently, Defendant argues that his attorney was ineffective because he failed to object to the portion of the State's closing argument [in which the State argued:
>
>> Well, Deputy Schmidt essentially triple checked the ID. He makes contact with him, he gets his driver's license, confirms that the driver's license in his hand is Chris Morgan, then he has a relatively lengthy conversation with him about what he's doing, where's going, why he was stopped, that it was potentially around a minute long face-to-face with this man, then he goes back to his patrol car, runs the license again, which pulls up another photo, which he then confirms again is this defendant, Chris Morgan. It cannot be more clear of a confirmation of an ID than this deputy went about doing it.]

> Defense counsel had no basis to object to the
> State's closing argument. The State's closing
> argument was a fair comment on the evidence adduced
> at trial, including Deputy Schmidt's testimony.
> Because there was no legal basis for Defense Counsel
> to object in the manner described by Defendant, it is
> axiomatic that Defense Counsel did not perform
> deficiently.

Ex. F at 72, 74-76 (internal citations omitted). Petitioner appealed, and the

First DCA per curiam affirmed the denial without a written opinion. Ex. I.

This Court addresses Petitioner's claim in accordance with the deferential

standard for federal court review of state court adjudications. Upon thorough

review of the record, this Court concludes that the state court's adjudication of

this claim was not contrary to clearly established federal law, did not involve

an unreasonable application of clearly established federal law, and was not

based on an unreasonable determination of the facts in light of the evidence

presented. Accordingly, this ineffectiveness claim is due to be denied.

Petitioner argues that the state court's decision is not entitled to

deference because he did not present the federal nature of the claim to the state

courts. See Doc. 17 at 4 ("[T]he state court rulings did not factor in the claim

presented to the federal court which involves the failure to even present the

federal constitutional claims to the state court."). Petitioner contends that in

his Rule 3.850 proceeding, "[h]e failed . . . to explain that it was a federal due

process violation, not merely a state law violation." Doc. 10 at 5.

Even assuming the state court's decision is not entitled to deference, Petitioner's claim has no merit. Petitioner argues that his trial counsel's failure to object to the state's comments violated his federal constitutional right to due process, a fair trial, and "confrontation." However, a review of the record shows that Petitioner has shown neither deficient performance nor resulting prejudice. Thus, his ineffectiveness claim is due to be denied.

As to Petitioner's contention that the trial court erred by denying him a fair trial based on the state's alleged improper bolstering, he raised a similar claim on direct appeal but he failed to present the federal nature of the claim.[2] Thus, as Petitioner recognizes, this claim is procedurally barred. Petitioner has shown neither cause nor prejudice resulting from the procedural bar, and he fails to demonstrate a fundamental miscarriage of justice would result if this claim were not addressed. Regardless, considering the trial transcript on the whole, the Court finds that the state's comments during closing argument did not render Petitioner's trial fundamentally unfair, or "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986). Petitioner's claim is due to be denied.

---

[2] In its answer brief, the state discussed the United States Supreme Court's decision in <u>Darden v. Wainwright</u>, 477 U.S. 168 (1986). <u>See</u> Ex. D at 9-12.

**C. Ground Three**

Petitioner argues that he was denied a fair trial and due process because the state's witness was permitted to testify and refer to evidence (Petitioner's driver's license and photograph displayed in the officer's vehicle) not before the court, and he was allowed to make an identification of Petitioner through that evidence. Doc. 9 at 8; Doc. 10 at 6. He further asserts that trial counsel was ineffective for not objecting properly to these matters. Doc. 9 at 8; Doc. 10 at 6. According to Petitioner, his conviction rests solely on the testimony of one police officer, and had his counsel properly objected to the testimony, the testimony would have been excluded. Doc. 10 at 6.

Petitioner did not exhaust the ineffectiveness claim that he now seeks to raise. Instead, he asks the Court to rule on the claim under the exception outlined in <u>Martinez</u>. Petitioner, however, fails to show this claim is "substantial," thus the Court finds this claim is unexhausted and procedurally barred.

Petitioner's trial counsel was not ineffective for failing to object to Deputy Schmidt's testimony about what occurred during the traffic stop. Deputy Schmidt testified that after he initiated the traffic stop, he spoke with Petitioner, who was driving the vehicle, for approximately 45 seconds to 2 minutes. Ex. B at 67-68. Deputy Schmidt identified Petitioner in the courtroom as the driver of the vehicle that fled. <u>Id.</u> at 66. He also confirmed that Petitioner

provided a driver's license, and Deputy Schmidt ran it through the Florida driver and vehicle information database to confirm it was a valid license. <u>Id.</u> Further, Deputy Schmidt testified that while running Petitioner's driver's license and registration, his computer system pulled up another photo of Petitioner. <u>Id.</u> at 68-69. Petitioner now claims that his counsel was ineffective for failing to object to Deputy Schmidt's testimony regarding Petitioner's driver's license and photograph that showed on his computer screen while running Petitioner's license.

Regardless of this alleged objectionable testimony, Deputy Schmidt conversed with Petitioner for 45 seconds to 2 minutes during the traffic stop, and Deputy Schmidt identified Petitioner in the courtroom as the driver of the vehicle. And trial counsel used the state's failure to enter the license and photograph into evidence as part of Petitioner's trial strategy. During opening statements, trial counsel focused on the "lack of evidence." Ex. B at 62 ("[T]his case is going to be defined by a lack of evidence, the things they can't show you, the things that you are not going to see, the evidence you are not going to hear, the things that will not be presented here today."). Likewise, during closing arguments, trial counsel argued about the lack of evidence corroborating Deputy Schmidt's testimony, including the state's failure to introduce the driver's license:

> [Deputy Schmidt] says the driver hands him the driver's license, he takes it back, he runs it through DMV, he does all this checking. And I said, And you kept the license; didn't you? You held on to it? Yes, I did. Did you give it back to the driver? No, I didn't. Okay. Where is it? Did the State offer you any evidence today of that driver's license? This officer is claiming that's where he made his ID, or helped him make his ID, this license. Have you seen it? I haven't seen it. We haven't seen it. Where is it? No license equals not guilty. It's just that simple. No license, not guilty.

Id. at 97-98. Considering the record, the Court finds that Petitioner fails to show his counsel's actions amounted to ineffective assistance. But even assuming deficient performance, Petitioner fails to show prejudice. He has not shown a reasonable probability that but for counsel's alleged ineffectiveness, the result of the proceeding would have been different. Thus, this claim is not substantial and due to be denied.

To the extent Petitioner raises the same trial court error claim that he did on direct appeal, the First DCA per curiam affirmed his judgment of conviction without issuing a written opinion. Upon thorough review of the record, this Court concludes that the state court's adjudication was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented.

Petitioner's attempt to raise a different trial court error claim regarding the admission of Deputy Schmidt's testimony is unexhausted and procedurally

barred. Petitioner has shown neither cause nor prejudice resulting from the procedural bar, and he fails to demonstrate a fundamental miscarriage of justice would result if this claim were not addressed. Regardless, such a claim is without merit in light of the record. Ground Three is due to be denied.

### D. Ground Four

According to Petitioner, he was "denied a favorable plea agreement where he rejected it on the basis of an unreasonable recommendation" and his trial counsel was ineffective "for recommending Petitioner reject this offer." Doc. 9 at 10. Petitioner acknowledges that at the time he rejected the state's second plea offer of 15-years imprisonment, "he knew he was facing a possible 30 year sentence as an [HFO]." Doc. 10 at 10. Petitioner contends that his counsel recommended rejecting the offer "because his trial prospects were so favorable," id., even though counsel knew of the state's evidence which left "about a zero chance that Petitioner would be convicted of anything less than the charged conduct," Doc. 17 at 8.

Respondents contend that this claim is untimely because it does not "relate back" to the original Petition. See Doc. 14 at 39-41. Alternatively, Respondents address the claim on the merits. See id. at 41-43. In response, Petitioner contends that Respondents waived the untimeliness argument, but if the Court finds the claim is untimely, Petitioner requests that the Court use its "discretion under its equitable powers" to hear the claim. Doc. 17 at 8-11.

Regardless of whether Respondents waived the untimeliness argument, Petitioner failed to raise this claim in state court and thus, it is unexhausted and procedurally barred. He argues that the Court should hear the ineffectiveness claim under the exception outlined in <u>Martinez</u>, but the Court finds Petitioner's underlying ineffective assistance of trial counsel claim with respect to the rejection of a plea offer is not substantial.

Even assuming trial counsel was deficient as alleged by Petitioner, Petitioner has not shown prejudice. In the context of a rejected plea offer, the prejudice prong requires the movant to show "a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" <u>Osley v. United States</u>, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting <u>Lafler v. Cooper</u>, 566 U.S. 156, 164 (2012)). But "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991).

Here, during the sentencing hearing, when the trial court asked defense counsel what he believed a reasonable sentence would be, defense counsel stated:

> Your Honor, I know at one point we had offered the State where Mr. Morgan was going to resolve his case for 12 years in Florida State Prison. That was the last offer that we made. We believed all along that the 10 - - 10 years we thought was reasonable, we had offered that, and my client even went above that in a good faith attempt to try to negotiate a disposition with the State prior to trial and stepped above the 10 and he had most recently offered 12. So it's always been our belief that that would be a reasonable, just sentence in this case.

Ex. A at 121-22. Petitioner's current after-the-fact assertions that he would have accepted a 15-year plea deal are unsupported especially considering trial counsel's statements at the sentencing hearing. While Petitioner apparently had expressed a desire to plead, the maximum amount of time he wished to plead to was 12 years—not the state's alleged 15-year offer. And in rejecting the state's alleged 15-year offer, Petitioner knew he was facing a possible 30-year sentence as an HFO. <u>See</u> Doc. 10 at 10. Thus, he fails to demonstrate a reasonable probability that he would have accepted the State's plea offer but for his counsel's alleged advice to reject it.

Additionally, during the sentencing hearing, the trial court detailed Petitioner's "lengthy criminal history" and found it was "more than appropriate that [Petitioner] be sentenced as an [HFO]." Ex. A at 122-23. Petitioner has not

26

shown the trial court would have accepted a 15-year plea deal. Because Petitioner fails to show his underlying ineffectiveness claim is substantial, Ground Four is due to be denied.

In light of the foregoing, it is

**ORDERED**:

1.     The Amended Petition (Doc. 9) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[3]

---

[3] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

3.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of February, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 2/13
c:
Chris Morgan, #294300
Counsel of Record